THE LAW OFFICE OF
**MICHAEL L. SPIEGEL**
11 PARK PLACE, SUITE 914
NEW YORK, NEW YORK 10007
TEL:(212)587-8558    FAX:(212)658-9480

September 2, 2015

**BY ECF**
Hon. Katherine B. Forrest
United States District Judge
500 Pearl Street
New York, NY 10007-1312

           Re:    <u>Mercado v. City of New York, *et al.*</u>, 14-CV-6775 (KBF)

Dear Judge Forrest:

      I write in response to Ms. Devlin's September 1, 2015, letter to the Court ("letter"). In it, defendants make allegations based on unfounded speculation and innuendo, claiming that plaintiff's counsel have attempted to "bully" the City into settlement by manipulating two major news organizations. Their attribution of motive is totally misplaced, and their facts are wrong, as discussed below.

      Separately, buried at the bottom of the second page of the letter, is an important discovery issue that requires resolution. Plaintiff has proposed depositions of eight specific individuals who have information directly related to the issues in this case; defendants have refused to schedule any depositions, stating that they object to "any deposition exceeding the 10 person limit," (letter at p. 2). Your Honor may recall that this issue was the subject of extended discussion at the June 23, 2015, conference with the Court. Following the spirit and letter of that conference, plaintiff has established a factual foundation supporting the need for each deposition, and now requests that the Court direct defendants to produce the eight individuals to be deposed.

<u>The Media</u>

      On August 18, 2015, the Daily News published a story concerning a Rikers inmate named Bradley Ballard, who, like Mr. Mercado, died because of lack of medical care [http://www.nydailynews.com/new-york/city-suspects-rikers-health-care-provider-criminal-act-article-1.2328894]. The following week, as part of their ongoing investigation into deaths at Rikers, a reporter from the Daily News contacted plaintiff's counsel. The reporter had already obtained copies of the official reports concerning Mr. Mercado by the State Commission of Correction ("SCOC") and the Investigation Division of the Department of Correction ("DOC").

      These two reports were made publicly available on PACER by defendants' counsel, who filed them as attachments to a letter to the Court on July 1, 2015 (Dkt. #152). That is how the Daily News discovered them (although, incidentally, the SCOC report is also a public document issued by SCOC). Plaintiff did not seek out the Daily News, and did not provide any documents

1

to the Daily News other than a photograph of Mr. Mercado.[1]

The reporter stated that the Daily News intended to run a story based on the SCOC and DOC reports, and asked for comment. As the article reflects, the City was also asked for comment, which a DOC representative provided. The brief attention to what happened to Mr. Mercado is but a small and fleeting part of a much larger story being pursued by the media, a story about conditions at Rikers that have resulted in numerous unnecessary deaths. The dysfunction and misconduct at Rikers Island have been the subject of wide public concern, and the subject of frequent statements by the Mayor. The repeated problems have brought about the City's decision to dismiss Corizon as the healthcare provider on Rikers Island, pledges of reform, and has led former DOC Commissioner Martin Horn to propose reducing reliance on Rikers, stating, "Rikers IS the Problem," [https://www.themarshallproject.org/2015/01/21/fixing-the-jail-where-kalief-browder-was-held]. Consequently, incidents on Rikers, and especially deaths, have drawn wide public scrutiny from the media over the past year.

Pursuing that larger Rikers story, reporters for The New York Times asked for, and were given, a copy of the video created by DOC that had been produced to plaintiff during this litigation. What is depicted in the video was no secret – it is described in detail in the public SCOC report at pp. 4-6, and the commentary accompanying the video posted on the Times website is taken from the SCOC report. Neither plaintiff, nor plaintiff's counsel, provided a statement to the Times. The video itself was plainly not covered by the June 11, 2015 protective order entered in this case (Dkt. # 140), and had never been the subject of discussion concerning confidentiality.

"It is well established that, [i]n the absence of . . . a [Rule 26(c)] protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." In re GM LLC Ignition Switch Litig., 2015 U.S. Dist. LEXIS 97308, at *332 (S.D.N.Y. July 24, 2015) (citation and internal quotation marks omitted). Furthermore, "pre-existing public interest . . . cuts in favor of allowing public access to the [discovery materials], not against it." Id. at *337-38 (citing Vazquez v. City of N.Y., 2014 U.S. Dist. LEXIS 61451, at *3 (S.D.N.Y. May 2, 2014) (declining to enter a protective order "in view of, among other things, the public interest in the subject matter of this civil rights litigation" and "the extent and nature of the existing media coverage of the case")). Finally, in Condit v. Dunne, 225 F.R.D. 113, 118 (S.D.N.Y. 2004), the Court found, based on Second Circuit precedent, that "publicity is unlikely to color incurably jurors' views, even in the most high-profile cases," citing In re NBC, Inc., 635 F.2d 945, 948 (2d Cir. 1980)).

On July 14, 2015, defendants proposed a second protective order. It was, however, the same type of disfavored "blanket" order condemned in In re GM; it sought to deem confidential "all records and documents received during this action." In a set of emails (attached as Exhibit

---

[1] Nor did plaintiff or plaintiff's counsel give anyone any personal information concerning any City or Corizon employee, as suggested in Ms. Devlin's letter at p. 2.

A), plaintiff objected that the proposed order was "overly broad," and proposed that if "defendants wish to designate specific items confidential . . . plaintiff is willing to discuss entering into a stipulation protecting such information." Defendants responded that "[o]ur concern is any documents obtained from third parties that concern our clients," which clearly does *not* relate to the DOC-created video. Defendants sent the last email expressing concern about protection for third party materials on July 23, 2015, and thereafter dropped the matter.

Plaintiff's Requested Depositions

At the June 23, 2015 conference, the Court did not set a numerical limit on the number of depositions. According to the transcript of the proceeding, Your Honor stated, "You guys talk about what the number. It's going to be more than ten, I strongly suspect it will be less than 20, but I will let you folks talk about and come up with what the right number is," (transcript at p. 22). Overall, the Court focused on the need to identify and depose individuals based on grounds for believing that they were connected to the issues in the case. Plaintiff has taken nine depositions thus far, and proposes to take the eight depositions described below. "The court must grant a request to exceed ten depositions unless the additional depositions would be unreasonably cumulative or duplicative, the requesting party had a prior opportunity in discovery to obtain the information sought, or the burden or expense of additional depositions would outweigh any likely benefit." In re Weatherford Int'l Sec's Litig., 2013 U.S. Dist. LEXIS 153011 at *6 (S.D.N.Y. Oct. 24, 2013) (citing F.R.Civ.P. 26(b)(2)(C) and Raniola v. Bratton, 243 F. 3d 610, 628 (2d Cir. 2001)).

Plaintiff wishes to depose the Corrections Officer who filled out a form that defendants have relied upon throughout this litigation, the Arraignment and Classification Risk Screening Form (attached as Exhibit B). It bears a handwritten notation that "Inmate states he's OK." Plaintiff should have the opportunity to challenge the bona fides of that notation and the provenance of the completed form. Plaintiff has been seeking the identity of this officer throughout this litigation, and has recently written defendants that if he is not identified by September 4, 2015, we shall make a motion to compel disclosure.

Plaintiff seeks to depose the Corrections Officer posted on the bus that delivered Mr. Mercado to Rikers (C.O. Rivera). When Mr. Mercado arrived, the surveillance video shows him carrying a clear plastic bag. According to the SCOC report, he was given several such bags by DOC personnel for him to vomit into. DOC Regulation 7.10.040 states, "Whenever an inmate complains or appears to be injured or sick, prompt action shall be taken to ensure that the inmate is examined by authorized personnel." Obviously, if Mr. Mercado was vomiting repeatedly on the bus, he "appear[ed] to be . . . sick." C.O. Rivera was likely to have noticed the vomiting, and noticed that Mr. Mercado was carrying the plastic bag (unlike any other inmate on the bus), yet did not take any action to assure that Mr. Mercado was examined by medical staff.

Plaintiff seeks to depose the four defendant Corrections Officers who were recommended for discipline by DOC for their failure to obtain medical assistance for Mr. Mercado (defendants

3

Faulkner, Jacobs, Brown, and Chin).  The DOC investigation concluded that "Mr. Mercado did advise them that he needed medical attention for his diabetes and that the officers failed to provide with it [*sic*]; and that Mr. Mercado's behavior exhibited obvious signs that he was in dire need of medical attention and officers failed to affording him such [*sic*]," (DOC report at p. 13).

Two other yet-to-be-identified Corrections Officers had the very same notice of Mr. Mercado's condition.  They are depicted in the video standing over Mr. Mercado as he lies on the floor in the Intake area, standing next to defendants Faulkner, Jacobs, and Brown.  The SCOC report states, "At 10:47 p.m., another officer also walked over Mercado's legs.  *Several officers looked and talked to Mercado who was still on the floor*," (SCOC report at p. 4, ¶7, emphasis added).  Plaintiff wishes to depose the two other officers who were looking at and talking to Mr. Mercado while he lay on the floor.

Plaintiff respectfully requests that defendants be directed to identify and produce the eight individuals to be deposed, and/or direct defendants to disclose where the non-defendant individuals may be subpoenaed for deposition.

                                                                              Respectfully submitted,

                                                                                  s/

                                                              Michael L. Spiegel

MLS:ms

cc:    Austa Devlin, Esq. (via ECF)
        Julie Ortiz, Esq. (via ECF)